IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CHRISTOPHER MICHAEL KELLEY,
      Plaintiff,

v.                                                   Civil No. 3:22cv12 (DJN)

AMERICAN CHECKED, Inc.,
      Defendant.

**MEMORANDUM OPINION**
**(Granting Motion to Dismiss)**

Plaintiff Christopher Michael Kelley ("Plaintiff") brings this action against American Checked, LLC ("Defendant"), alleging violations of the Fair Credit Reporting Act ("the FCRA"). (Am. Compl. (ECF No. 12).) This matter now comes before the Court on Defendant's Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) Due to Lack of Personal Jurisdiction. (ECF No. 16.) For the reasons set forth below, the Court hereby GRANTS the Motion to Dismiss. (ECF No. 16.)

## I.    BACKGROUND

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). If a federal court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id.* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to [plaintiff], assume credibility, and draw the most

favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiff's proof of personal jurisdiction to decide which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted). Based on these standards, the Court accepts the following facts.

### A. Defendant's Operations

Defendant came into existence in 2004. (Def.'s Mem. in Supp. of Mot. ("Def.'s Mem.") Ex. A ("Hakman Decl.") ¶ 3 (ECF No. 17).) According to Plaintiff, Defendant constitutes a consumer reporting agency subject to the provisions of the FCRA because it:

> regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing and furnishing consumer reports.

(Am. Compl. ¶ 7.)

Defendant is an Oklahoma limited liability company with its principal place of business in Oklahoma. (Hakman Decl. ¶¶ 3-7.) It serves as a national background screening solutions provider, in which it enters into contracts with other business entities to provide background reports for employment. (Hakman Decl. ¶¶ 3-7.) Defendant conducts these same routine business activities nationwide, with no particular emphasis on Virginia. (Hakman Decl. ¶¶ 18, 21.)

2

Defendant has not established any offices, officers or employees in Virginia. (Hakman Decl. ¶ 14.) None of Defendant's screening operations take place in Virginia. (Hakman Decl. ¶ 15.) Defendant uses Amazon Web Services' cloud hosting server in Ashburn, Virginia, and it hosts at least some internal documents at a datacenter in Northern Virginia. (Resp. Ex. I ("Kelley Decl.") at ¶¶ 28-30.) Defendant employs sales representatives to cover all 50 states. (Pl.'s Br. in Resp. to Mot. ("Resp.") Ex. E ("Sales Map") (ECF No. 18); *see* Hakman Decl. ¶ 17 (explaining that Defendant does not target any advertising to Virginia specifically).)

As of March 29, 2022, Defendant serves nineteen customers in Virginia, prepares background screening reports on Virginia residents and collects electronic data from courts and agencies located in Virginia. (Hakman ¶¶ 18, 21.) Its Virginia customers "represent[] less than 2% of [its] customer base" and "less than 1% of its total revenue." (Hakman Decl. ¶ 18.) Any documents or other discoverable material relevant to the case exists outside of Virginia. (Hakman Decl. ¶ 20.)

### B. Plaintiff's Background Check

Defendant entered a contractual relationship with Experimental Aircraft Association, Inc. ("Experimental"), a nonstock corporation incorporated and with its principal place of business in Wisconsin, to provide Experimental with background reports for employees and volunteers. (Am. Compl. ¶ 17.) Plaintiff serves as a member of Experimental. (Am. Compl. ¶ 15.) In 2018, he applied and was approved to participate in Experimental's Young Eagles program, in which he taught youth about aviation as a certified volunteer pilot. (Am. Compl. ¶¶ 24-25; Kelley Decl. ¶ 18.) On July 3, 2018, experimental certified Plaintiff to participate in the program. (Am. Compl. ¶ 15.)

3

Experimental requires participants in the Young Eagles program to reapply and receive a background check every three years, so Plaintiff reapplied for the program in 2021. (Am. Compl. ¶¶ 27-28.) To reapply, Kelley submitted his address, birth date, phone number, email address and Social Security number into Applicant Direct, a web portal designed by Defendant and featured on Experimental's website. (Hakman Decl. ¶ 10; *see* Resp. Ex. J) (showing the portal on Experimental's website). This web portal transmitted Kelley's identifying information directly to Defendant. (Hakman Decl. ¶ 10.)

After Defendant prepared the screening report, Defendant provided the report directly to Experimental on August 2, 2021. (Hakman Decl. ¶ 11; Am. Compl. ¶ 31.) The screening report that Experimental received erroneously indicated that, in 1996, Plaintiff had been found guilty in the Circuit Court of Brevard County, Florida, of two felony counts including aiding and abetting sexual battery of a victim over 12 years of age with nonviolent force and false imprisonment of a child under 13 years of age. (Am. Compl. ¶ 32.) However, Plaintiff's name proved identical to the person with the felony record stated in the report, also known as "Christopher Michael Kelley." (Am. Compl. ¶ 34.) Plaintiff's date of birth differed from the other Mr. Kelley's, and the Florida records revealed that the other Mr. Kelley with the felony record had an address on file where Plaintiff never resided or had any association with. (Am. Compl. ¶¶ 35-36.) The two also had different Social Security numbers. (Am. Compl. ¶ 37.) Plaintiff has never been convicted of any crime, and Plaintiff and the Christopher Michael Kelley in the report are two different people. (Am. Compl. ¶ 39.) Nonetheless, as a result of the screening report suggesting Plaintiff committed a sex offense, Experimental rejected Plaintiff's application to the Young Eagles program. (Am. Compl. ¶ 42.)

4

### C. The Amended Complaint

On January 5, 2022, Plaintiff filed his original Complaint. (ECF No. 1.) On March 2, 2022, Defendant filed a Motion to Dismiss this Complaint. (ECF No. 10.) On March 15, 2022, Plaintiff filed an Amended Complaint, raising four claims for relief based on the above allegations. (ECF No. 12.) Counts One and Two assert Willful Noncompliance and Negligent Noncompliance, respectively, under the Fair Credit Reporting Act ("FCRA"), alleging that Defendant's practices and procedures failed to account for individuals with identical names, matched names of individuals with different dates of birth and excluded other forms of due diligence to check the accuracy of the matched names in violation of 15 U.S.C. § 1681e(b). (Am. Compl. ¶¶ 44-61.) Counts Three and Four assert Willful Noncompliance and Negligent Noncompliance, respectively, under the FCRA, alleging that Defendant failed to maintain strict procedures designed to ensure that public information likely to have an adverse effect on Plaintiff's ability to obtain employment from Experimental proved complete and up to date, in violation of 15 U.S.C. § 1681k. (Am. Compl. ¶¶ 62-77.)

### D. Defendant's Motion to Dismiss

On March 29, 2022, Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 16.) Defendant argues that Plaintiff could not establish that this Court had general or specific jurisdiction over Defendant. (Def.'s Mem. at 5-18.) In support of its Motion to Dismiss, Defendant attached a Declaration by Juliana Hakman ("Hakman"), Defendant's founder, who described Defendant's business operations. (Hakman Decl. ¶ 2.) On April 7, 2022, Plaintiff responded to this Motion, (Resp. (ECF No. 18)), and on April 13, 2022, Defendant filed its Reply (Reply (ECF No. 19)), rendering the Motion ripe for review.

## II. STANDARD OF REVIEW

Determinations of personal jurisdiction require a two-step inquiry. First, a court must find that the long-arm statute of the forum state authorizes the service of process to the defendant, or, in federal question cases, that the federal statute relied upon by the plaintiff provides for nationwide service of process to any defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987) ("[W]hether a defendant is amenable to service [constitutes] a prerequisite to [a court's] exercise of personal jurisdiction."). Then, the court must find that the exercise of personal jurisdiction over the defendant satisfies the requirements of the Due Process Clause of the Fifth or Fourteenth Amendments, depending on which statute authorizes the service of process. *Id.*

When the federal statute relied upon by the plaintiff provides for nationwide service of process, the Due Process Clause of the Fifth Amendment — not the Fourteenth Amendment — determines the extent of a court's personal jurisdiction. *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1044 (E.D. Va. 1997). The Fifth Amendment provides for a much broader exercise of personal jurisdiction than the Fourteenth Amendment, requiring only "sufficient aggregate contacts with the United States as a whole." *Id.* Conversely, "[i]n federal question actions based on a statute that does not provide for nationwide jurisdiction, a federal court exercises personal jurisdiction over a defendant in the manner consistent with state law," including the limitations of the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause. *Moseley v. Fillmore Co.*, 725 F. Supp. 2d 549, 559 (W.D.N.C. 2010) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) and Fed. R. Civ. P. 4(k)(1)(A)); *see ESAB Grp., Inc.*, 126 F.3d at 622 (explaining that

6

the *"in personam* jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment").

Thus, as a predicate to its exercise of personal jurisdiction over Defendant, the Court must first consider whether the federal statute upon which Plaintiff relies — the FCRA — authorizes nationwide service of process; otherwise, the Court must find that Virginia's long-arm statute authorizes service. "The FCRA does not authorize nationwide service of process," *Juarez v. Dimon*, 2014 WL 7177544, at *2 (C.D. Ill. Dec. 16, 2014) (citing 15 U.S.C. § 1681p); therefore, Virginia's long-arm statute provides Plaintiff's only statutory basis for the exercise of personal jurisdiction.

Because Virginia's long-arm statute extends personal jurisdiction to the extent that the Fourteenth Amendment Due Process Clause permits, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries become one." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General personal jurisdiction exists over defendants with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the "continuous

7

corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," a court can assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)). Otherwise, a court may exercise only specific personal jurisdiction if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Here, Plaintiff concedes that the Court does not have general personal jurisdiction and asserts only specific personal jurisdiction. (Resp. at 2 n.1.) Consequently, the Court will not address general personal jurisdiction.

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted). Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

The first prong of the test for specific jurisdiction concerns whether, and how rigorously, "the defendant purposely avail[ed] himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp.*, 561 F.3d at 278. The Fourth Circuit has enumerated several nonexclusive factors to consider, including:

8

> whether the defendant maintains offices or agents in the forum state, whether the defendant owns property in the forum state, whether the defendant reached into the forum state to solicit or initiate business, whether the defendant deliberately engaged in significant or long-term business activities in the forum state, whether the parties contractually agreed that the law of the forum state would govern disputes, whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, the nature, quality and extent of the parties' communications about the business being transacted, whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). The contacts that constitute purposeful availment must be the "defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1025 (2021) (quoting *Keeton v. Hustler Mag. Inc.*, 465 U.S. 770, 774 (1984)). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (citing *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Consulting Eng'rs Corp.*, 471 U.S. at 477). With this standard in mind, the Court now turns whether it can exercise personal jurisdiction over Defendant.

## III. ANALYSIS

Here, Defendant contends that it has not purposefully directed any business, activities or functions at Virginia specifically, because its general nationwide marketing plan encompasses all 50 states without targeting Virginia in particular. (Def.'s Mem. at 10.) Defendant also argues that it does not maintain a physical presence in Virginia, that none of the functions related to Plaintiff's screening report took place in Virginia and that Defendant only generates a small fraction of its revenue from Virginia clients. (Def.'s Mem. at 10-11.)

Plaintiff responds that Defendant has purposely availed itself of Virginia, namely that Defendant has targeted Virginia by assigning a sales representative to Virginia and other surrounding states. (Resp. at 11-12.) Plaintiff also explains that Defendant has mined the data of Virginia courts and agencies using its network of court researchers across courthouses nationwide, preparing and selling background reports on Virginians. (Resp. at 12-13.) Plaintiff also emphasizes that roughly two percent of Defendant's customers have Virginia addresses. (Resp. at 13.) Alternatively, Plaintiff relies on the so-called effects test, claiming that Defendant knew Plaintiff resided in Virginia and knew Plaintiff would suffer harm there as a result of the erroneous screening report, serving as purposeful availment. (Resp. at 13-14; *see Calder v. Jones*, 465 U.S. 783, 791 (1984) (holding that where Defendant performs intentional conduct calculated to cause injury to Plaintiff in the forum state, jurisdiction is proper).)

The Court agrees with Defendant and finds that it cannot exercise personal jurisdiction over Defendant, because Defendant did not purposefully avail itself of the forum state. Defendant has no employees, offices or executive officers in Virginia and maintains no computer servers of its own in Virginia. (Hakman Decl. ¶ 14.) Defendant markets its services to all fifty states, but it does not specifically target Virginia in these efforts. (Hakman Decl. ¶ 17.) Only a

10

small portion of its revenue comes from its Virginia clients. (Hakman Decl. ¶ 18.) None of these activities indicate that Defendant purposefully reached into Virginia. *See Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 659 (4th Cir. 1989) (holding that listing an advertisement in a nationally distributed magazine does not confer personal jurisdiction); *Powers v. One Techs., LLC*, 2021 WL 3519282, at *4 (W.D.N.C. Aug. 10, 2021) ("[N]ationwide marketing programs will not satisfy minimum contacts with a forum since there is no specific targeting of the forum state or its citizens." (citation omitted)).

Likewise, that Defendant prepares background reports on Virginia residents also does not confer personal jurisdiction here, because it provides background screening reporters to customers in many states, without a particular focus on Virginia. (Hakman Decl. ¶ 16; *see* Resp. at 12-13 (asserting that personal jurisdiction exists, because Defendant prepares, sells and transmits reports on Virginia residents).) Obtaining data from many states and preparing background checks on individuals throughout the country, without targeting Virginia, does not constitute purposeful availment. *Jackson v. Genuine Data Servs., LLC*, 2022 WL 256281, *6-7 (E.D. Va. Jan. 26, 2022) (finding that defendant that collected data from all fifty states without targeting Virginia and passed that information to other entities for their own independent use did not purposefully avail itself of the state).

Third, Defendant's use of Amazon Web Services' cloud hosting services, including a server allegedly in Ashburn, Virginia, does not affect the Court's analysis. (Kelley Decl. ¶ 30.) Plaintiff claims that Defendant chose the Virginia location for the physical location of its service. (Resp. at 11; Kelley Decl. ¶¶ 28-30.) However, Hakman stated in her Declaration that Defendant "has no discretion to influence which data centers Amazon elects to use to provide [its cloud hosting services]." (Hakman Decl. ¶ 22.) Plaintiff has not offered any evidence to rebut this

11

evidence. And, as the Fourth Circuit has held, the mere presence of a web server or hosting company creates only a *de minimus* level of contact insufficient for purposeful availment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401-02 (4th Cir. 2003); *see, e.g.*, *Alexander v. Avenue*, 473 F. Supp. 3d 551, 558 (E.D. Va. 2020) (finding that location of Amazon Web Services server did not weigh in favor of personal jurisdiction).

Fourth, Plaintiff contends that Defendant did not just passively maintain its Applicant Direct online portal, but it also knowingly interacted with Plaintiff in Virginia through that site when Plaintiff used it to submit identifying information, including his Virginia address. (Resp. at 14-16; Compl. ¶¶ 12-13.)[1] The Fourth Circuit has adopted a "sliding scale model" established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to determine when a defendant's online activities justify the exercise of personal jurisdiction. *UMB Recordings v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). The *Zippo* test establishes a sliding scale—interactive, semi-interactive, and passive—and states that a court may exercise personal jurisdiction when a nonresident defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713-14 (4th Cir. 2002) (citing *Zippo*, 952 F. Supp. at 1124).

The Fourth Circuit has clarified, however, that regardless of where a defendant's Internet presence falls on the sliding scale, the "touchstone remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state . . . creat[ing] a substantial

---

[1] Defendant also submits screenshots of Defendant's website and Twitter profile, neither of which display any Virginia-specific information or posts. (Resp. Exs. A-B (ECF Nos. 18-1, 18-2).)

12

connection with the forum state." *Id.* (quoting *ESAB Grp., Inc.*, 126 F.3d at 625 (internal quotation marks and alteration omitted)). As this principle applies to the Internet, a website with a large volume of visitors and repeated interactions with those visitors from the forum state subjects the defendant to that state's jurisdiction. *UMB Recordings, Inc.* 963 F.3d at 353.

The Applicant Direct portal does not satisfy this standard. The portal appears to be highly interactive or semi-interactive, as Plaintiff used it to submit identifying information, including his location in Virginia, to Defendant. (Am. Compl. ¶ 30.) However, the portal clearly did not target Virginia, as Plaintiff accessed it from Wisconsin-based Experimental's website. (Am. Compl. ¶ 29.) A plaintiff's interaction with a defendant's website alone, when the website does not target the forum state, cannot justify the exercise of personal jurisdiction over that defendant. *See, e.g.*, *Carefirst of Md.*, 334 F.3d at 394-95, 400-02 (holding that district court lacked personal jurisdiction over defendant that maintained semi-interactive website that did not target the forum state and encouraged "anyone, anywhere [to] make a donation" either through the website or over the phone); *Brighter Sky Prods., LLC v. Marriott Int'l, Inc.*, 2018 WL 2248601, at *6 (S.D.W. Va. May 16, 2018) ("A streamlined capability to make a reservation at a Marriott hotel anytime, anywhere [from a semi-interactive website], is not a sufficient contact with West Virginia to sustain personal jurisdiction within the traditional bounds of fair play and substantial justice.").

Finally, Plaintiff also seeks to establish purposeful availment using the so-called "effects test." (Resp. at 14.) He cannot prevail under this alternate route, either. The effects test allows a plaintiff to show purposeful availment when a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984). In other words, "[t]he proper question is not where the plaintiff

13

experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiff has not shown a connection between Defendant and the forum beyond his residence here, because, as discussed above, Defendant never targeted Virginia in its marketing or reporting efforts. As such, Defendant could not have intentionally calculated its actions to injure Plaintiff in Virginia, as the effects test requires.

For these reasons, the Court must find that Defendant has not purposefully availed itself of Virginia law, and that Plaintiff does not fulfill the first prong of specific jurisdiction test. Because Plaintiff failed to meet the first prong, the Amended Complaint cannot survive the Motion to Dismiss. The Court need not address whether this action arose out of Defendant's activities in Virginia or whether exercising personal jurisdiction over Defendant would be constitutionally reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (holding that a court need not consider prongs two and three if the plaintiff does not satisfy the first prong).

## V. CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16) and will DISMISS WITHOUT PREJUDICE this case.

An appropriate Order will issue.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: July __, 2022

experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiff has not shown a connection between Defendant and the forum beyond his residence here, because, as discussed above, Defendant never targeted Virginia in its marketing or reporting efforts. As such, Defendant could not have intentionally calculated its actions to injure Plaintiff in Virginia, as the effects test requires.

For these reasons, the Court must find that Defendant has not purposefully availed itself of Virginia law, and that Plaintiff does not fulfill the first prong of specific jurisdiction test. Because Plaintiff failed to meet the first prong, the Amended Complaint cannot survive the Motion to Dismiss. The Court need not address whether this action arose out of Defendant's activities in Virginia or whether exercising personal jurisdiction over Defendant would be constitutionally reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (holding that a court need not consider prongs two and three if the plaintiff does not satisfy the first prong).

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16) and will DISMISSES WITHOUT PREJUDICE this case.

An appropriate Order will issue.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: July 29, 2022

14